# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Tony Gaines,
  Petitioner

vs                                          Case No. 1:07cv347
                                            (Barrett, J.; Wehrman, M.J.)

Warden, Madison Correctional
Institution,[1]
  Respondent

## REPORT AND RECOMMENDATION

        This habeas corpus action brought pursuant to 28 U.S.C. § 2254 was administratively stayed after the District Court declined to adopt a Report and Recommendation filed on June 16, 2008 to deny the petitioner's motion for stay; to deny with prejudice two of petitioner's grounds for relief; and to certify an "uncertain question of state-law" necessary for the resolution of petitioner's remaining double jeopardy claim to the Ohio Supreme Court. (*See* Docs. 14, 24). The matter was remanded to the magistrate judge for reconsideration of the petitioner's motion for stay in light of intervening state court decisions pertaining to the double jeopardy claim. (*See* Docs. 24-25). The case was stayed for exhaustion purposes on July 1, 2009 when the District Court adopted a second Report and Recommendation by the

---

        [1]In the petition, petitioner properly named the Warden of Lebanon Correctional Institution (LeCI) as respondent, because petitioner was incarcerated at LeCI at that time. (*See* Doc. 1). In a pleading filed August 3, 2010, petitioner informed the Court that he is now incarcerated at Madison Correctional Institution (MaCI) in London, Ohio. (Doc. 33). Because it now appears that MaCI's Warden is the individual who currently has custody of petitioner, the caption of the case is hereby changed to reflect the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

magistrate judge to vacate "the recommendation made on June 16, 2008 to deny petitioner's motion for stay" and to stay the case while petitioner exhausted a then-pending state post-conviction remedy. (Doc. 26, p. 5; Doc. 27).

The matter was reinstated on the Court's active docket on June 22, 2010 upon a showing by petitioner that he had unsuccessfully exhausted all available state court remedies and had complied with the conditions of the stay order. (*See* Docs. 28, 30). In reopening the case, the Court ordered respondent to file a supplemental return of writ updating the record as an additional response to petitioner's double jeopardy claim. (*Id.,* p. 3). Respondent filed the supplemental return of writ on July 27, 2010. (Doc. 32). At this juncture, the matter appears ripe for consideration of petitioner's remaining double jeopardy claim.

## Background

The factual and procedural history of this case already has been discussed in a prior Report and Recommendation issued June 16, 2008, which is incorporated by reference herein. (*See* Doc. 14, pp. 1-4). Essentially, petitioner was charged with two felony counts of aggravated vehicular homicide, as well as a misdemeanor count of failing to stop and remain at the scene of an accident, in the Hamilton County, Ohio, Court of Common Pleas. The charges stemmed from one incident resulting in the death of the passenger of an automobile driven by petitioner, who had struck a building after "sheer[ing] off two utility poles" while driving under the influence of alcohol and at a high rate of speed. (*See* Doc. 9, Ex. 1 & Ex. 25, Tr. 647). After a jury trial, petitioner was found guilty on all counts and sentenced to consecutive, maximum terms of imprisonment totaling eighteen (18) years for the aggravated vehicular homicide offenses. (*Id.,* Ex. 3).

On direct appeal, petitioner's appellate counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738 (1967). In the brief, counsel stated that he could not find "anything in the record that might arguably support the appeal," but also asserted "points" that petitioner wanted to raise on appeal, including the claim that the "aggravated vehicular homicide convictions are for allied offenses of similar import." (*Id.,* Ex. 7). The Ohio Court of Appeals agreed with appellate counsel's determination that the "proceedings below were free from prejudicial error" and affirmed the trial court's judgment after "reviewing the entire record and considering the issues raised by Gaines." (*Id.,* Ex. 9). On further appeal to the Ohio Supreme Court, petitioner was

2

denied leave to appeal, and the appeal was summarily dismissed "as not involving any substantial constitutional question." (*Id.,* Ex. 13).

On May 1, 2007, after unsuccessfully pursuing state post-conviction relief and and an application for reopening of the direct appeal (*see id.,* Exs. 14-19), petitioner filed the instant federal habeas petition with the assistance of counsel.[2] (Doc. 1).  In the petition, as amended, petitioner alleges three grounds for relief. (Doc. 6).  He claims in Ground One that he "received multiple punishment for the same offense" when he was "convicted of aggravated vehicular homicide of the same victim in two different ways, and received consecutive sentences on both counts for the death of one victim." (*Id.*, p. 6).  In Ground Two, he alleges his appellate counsel was ineffective for filing a "no-error (*Anders*) Brief." (*Id.,* p. 8).  In Ground Three, he contends that he was improperly sentenced to "maximum, consecutive terms without jury participation in fact-finding of aggravating sentencing factors." (*Id.,* p. 9).

Nearly a year later, in March 2008, petitioner's counsel filed a second petition for post-conviction relief entitled "Motion To Vacate And Set Aside Judgments Of Conviction And Sentence" with the trial court on petitioner's behalf. (Doc. 32, Ex. A).  In the petition, petitioner claimed that the imposition of consecutive sentences for the two counts of aggravated vehicular homicide, which are allied offenses of similar import under state law, "constitutes multiple punishments for but one offense" in "violation of his right against double jeopardy, under the Fifth Amendment to the United State Constitution." (*Id.,* p. 2).[3]  Counsel also filed a motion in this action for a stay of the case while petitioner exhausted the pending state post-conviction remedy. (Doc. 12).

On June 16, 2008, the magistrate judge issued a Report and Recommendation, recommending that the motion for stay be denied. (Doc. 14, pp. 5-8).  He reasoned that "although petitioner has filed a second petition for post-conviction relief, which apparently is currently pending before the state trial court, he raises in the petition

---

[2]Counsel, who is now an inactive member of the Ohio bar due to a medical condition that "has made it impossible ... to practice law," was permitted to withdraw from the case when the matter was reopened on June 22, 2010. (*See* Doc. 30, p. 2).

[3]It appears from the record that petitioner's counsel filed supplemental pleadings in June and August 2008, as well as an additional pleading entitled "Petition For Post Conviction Relief" on October 1, 2008, based on the same claim. (*See* Doc. 32, Exs. B-D).

essentially the same issue that was asserted by him on direct appeal – that he was improperly convicted and subjected to multiple punishments for allied offenses of similar import." (*Id.,* p. 7). He reasoned further: "Even assuming, *arguendo,* that petitioner is pursuing relief in the state courts based on a constitutional double jeopardy claim that was not adequately alleged in the direct review proceedings, he has not demonstrated "good cause" [as required under *Rhines v. Weber,* 544 U.S. 269, 277-78 (2005),] for his failure to earlier exhaust such claim, which shares the same underlying factual basis as his state-law allied-offense-of-similar-import claim." (*Id.,* pp. 7-8).

In the June 16, 2008 Report and Recommmendation, the magistrate judge went on to consider each of petitioner's grounds for relief. He recommended that Grounds Two and Three of the amended petition be denied with prejudice because (1) petitioner had waived the record-based claim alleged in Ground Three, which "was not asserted as an appealable issue on direct appeal to the Ohio Court of Appeals in either the *Anders* brief filed by appellate counsel or petitioner's *pro se* letter filed ... with that court;" and (2) petitioner had not demonstrated he was entitled to habeas relief based on the merits of the ineffective assistance of appellate counsel claim alleged in Ground Two. (*Id.,* pp. 8-17).

The magistrate judge further concluded, however, that the double jeopardy claim alleged in Ground One of the amended petition, which was raised on direct review both "to the Ohio Court of Appeals in petitioner's *Anders* brief" and "on further appeal" to the Ohio Supreme Court, was subject to review on the merits. (*See id.,* pp. 18-19).[4] He found that the claim posed a "close" question as to "whether the Ohio legislature intended to impose multiple punishments for vehicular homicides when there is only one victim, but the driver was found guilty of committing the offense while under the influence of drugs or alcohol (a strict liability offense) in addition to while driving recklessly." (*See id.,* pp. 19-26).

In so finding, the magistrate judge recognized that some state intermediate appellate courts, including the First District Court of Appeals, which presided over petitioner's direct appeal, had ruled that a person convicted of the two aggravated

---

[4]In making this determination, the magistrate judge expressly rejected respondent's contentions that the claim was waived because "petitioner only asserted a state-law claim to the state courts" and because petitioner presented the claim on appeal to the Ohio Supreme Court as an example of ineffectiveness by appellate counsel. (Doc. 14, p. 19 n.10).

4

vehicular homicide offenses could be multiply punished under Ohio's multi-count statute, Ohio Rev. Code § 2941.25, because the offenses are of "dissimilar import" when considered "in the abstract" pursuant to the standard enunciated by the Ohio Supreme Court in *State v. Rance,* No. 710 N.E.2d 699, 703 (Ohio 1999). (*See id.,* pp. 23-24) (citing *State v. Hundley,* No. C-060374, 2007 WL 2019804, at *2-3 (Ohio Ct. App. 1 Dist. July 13, 2007) (unpublished), *appeal dismissed,* 877 N.E.2d 991 (Ohio 2007)). However, the magistrate judge expressed concern that the Ohio Supreme Court, which had yet to consider the specific issue at hand, might well reach a different conclusion as had other intermediate appellate courts in conflicting decisions. (*See id.,* pp. 24-25).

He emphasized that, of particular concern, the Ohio Supreme Court had "recently issued a decision [in *State v. Cabrales,* 886 N.E.2d 181 (Ohio 2008),] clarifying the *Rance* 'abstract elements comparison test,' which casts doubt on the First District Court of Appeals' ... use of a 'strict textual comparison' of the elements in determining whether offenses are of similar or dissimilar import." (*Id.,* p. 25). The magistrate judge explained:

> Specifically, in *Cabrales,* the state supreme court held that *Rance* has been misinterpreted to require a "'strict textual comparison' of the elements under R.C. 2941.25(A)," so that "only where the offenses exactly overlap are they allied offenses of similar import." [*Cabrales,* 886 N.E.2d at 186-87] (disagreeing with this approach enunciated by the First District Court of Appeals in *State v. Palmer,* 772 N.E.2d 726 (Ohio Ct. App. 1 Dist. 2002)). The court held that, instead, "*Rance* requires courts to compare the elements in the abstract, i.e., without considering the evidence in the case, but does not require an exact alignment of elements." *Id.* at [188]. Under this more flexible standard, "if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." *Id.*

> Of additional concern, the *Cabrales* court referred to a case from the Second District Court of Appeals as an example of the confusion among the intermediate appellate courts in applying *Rance*'s "abstract elements comparison test," which may have led to an "unreasonable result[]." *See id.* at [185]. Although the Second District Court of Appeals' case is not

5

directly on point to the case at hand, the following excerpt from *Cabrales* suggests that there are enough similarities between the two cases to create doubt as to how the highest state court would resolve the issue facing this Court:

> ....[T]he Second District Court of Appeals considered whether involuntary manslaughter and aggravated vehicular homicide are allied offenses of similar import *when there is only one victim. State v. Hendrickson,* Montgomery App. No. 19045, . . . 2003 WL 264339.  Finding that it was compelled to apply *Rance*, the court compared the elements of the two offenses, and because the elements did not correspond to such a degree that commission of one crime will result in the commission of the other, they were not allied offenses....  Thus, the court held that Hendrickson could be sentenced to both involuntary manslaughter and aggravated vehicular homicide....  However, the court stated, "*Despite the misalignment of offenses in the abstract, only one death occurred under the facts of the present case. Consequently, Hendrickson should have been sentenced either for involuntary [manslaughter] or for aggravated vehicular homicide, not both." Id.* at ¶ 26, . . . *see also State v. Waldron* (Sept. 1, 2000), Ashtabula App. No. 99-A-0031, 2000 WL 1257520, *5 (Christley, J., concurring) (by holding that involuntary manslaughter and aggravated vehicular homicide are not allied offenses of similar import *when there was only one victim,* "we have not only said that appellant was guilty of killing two people, we are saying that he was guilty of killing each victim two times").

*Id.* at [185] (emphasis added).

(Doc. 14, pp. 25-26).

The magistrate judge concluded that the *Cabrales* decision raised serious concerns without definitively answering the specific issue posed in this case and, therefore, recommended that the following unresolved question of Ohio law, which

6

is "determinative of the proceeding," be certified to the Ohio Supreme Court:

> Whether in this case, which involved a single accident resulting in the death of one victim, the two charges of aggravated vehicular homicide under Ohio Rev. Code § 2903.06(A)(1)(a) and Ohio Rev. Code § 2903.06(A)(2), both of which petitioner was found guilty of committing, constitute allied offenses of similar import when compared in the abstract under the first step of the *Rance* inquiry, as recently clarified by the Supreme Court of Ohio in *Cabrales.*

(*Id.,* p. 27).

While the June 16, 2008 Report and Recommendation was pending before the District Court for consideration, the Ohio courts rendered decisions addressing the relevant state-law issue underlying petitioner's double jeopardy claim, which appeared to moot the need for certification of the question to the state supreme court. Specifically, in *State v. Winn,* 905 N.E.2d 154, 157-59 (Ohio 2009), the Ohio Supreme Court held that the offenses of kidnapping and aggravated robbery, which stemmed from the same conduct, were allied offenses of similar import when analyzed in the abstract. Moreover, importantly, in *State v. Moore,* No. C-70421, 2008 WL 3544342 (Ohio Ct. App. 1 Dist. Aug. 15, 2008) (unpublished), *appeal dismissed,* 900 N.E.2d 200 (Ohio 2009), the First District Court of Appeals reconsidered the exact issue presented in this case in light of *Cabrales*. The court overruled its prior decision in *Hundley* and held that a defendant charged with two aggravated vehicular homicide offenses stemming from one act that resulted in the death of one victim "may be convicted and sentenced for only one aggravated vehicular homicide." *Id.* at *1. Although concurrent sentences had been imposed, the court concluded that "prejudicial error" had occurred because the defendant's criminal record still "would reflect two convictions when he had committed only one criminal act." *Id.*

Given these intervening state court decisions, the matter was remanded to the magistrate judge for reconsideration of petitioner's motion for stay. (Docs. 24-25). On reconsideration, the magistrate judge vacated his recommendation to deny petitioner's motion for stay and recommended that the motion be granted, "but only to the extent that the case should be held in abeyance while petitioner exhausts his double jeopardy claim in the pending state post-conviction proceeding filed March 27, 2008." (Doc. 26, p. 5). In so ruling, the magistrate judge stated:

7

> At this juncture, ... it now appears that petitioner may very well prevail on the underlying state-law allied-offense-of-similar-import claim in the pending state post-conviction proceeding given that the First District Court of Appeals recently overruled prior precedents and changed its position in petitioner's favor.... At the very least, under current Ohio law governing the underlying state-law issue, it appears that petitioner has alleged a strong claim on the merits in Ground One of the instant petition, which may entitle him to relief to the extent he has been subjected to multiple punishments for the same offense in violation of the Double Jeopardy Clause.

(*Id.,* p. 4).

The magistrate judge concluded that a stay was warranted under *Rhines,* because (1) "there now appears to be 'good cause' for petitioner's relatively recent, renewed attempt to have the state courts revisit the state-law issue initially raised in the *Anders* brief;" (2) "[p]etitioner has not engaged in intentionally dilatory litigations;" and (3) "most importantly, the unexhausted claim is potentially meritorious given the recent developments in Ohio law in petitioner's favor on the state-law issue underlying the double jeopardy claim." (*Id.,* pp. 4-5). As discussed above, the District Court adopted the magistrate judge's recommendation to grant petitioner's motion for stay and the case was terminated on the Court's active docket while petitioner exhausted the state post-conviction remedy. (*See* Doc. 27).

Thereafter, on October 14, 2008, the Hamilton County Common Pleas Court denied petitioner's petition for post-conviction relief on the ground that it lacked jurisdiction to consider the petition, which was "filed out of time" in March 2008. (Doc. 32, Ex. F). The court further found that petitioner had "failed to establish that there is applicable new law that would allow this filing, because the cases cited by defendant would only apply to cases on direct appeal." (*Id.*).

On December 23, 2009, the Ohio Court of Appeals, First Appellate District, affirmed the trial court's judgment, reasoning in pertinent part as follows:

> The common pleas court properly declined to entertain, because it had no jurisdiction to entertain, Gaines's postconviction claim. Gaines's direct appeal from his judgment of conviction had divested the trial court of jurisdiction over his case, except to act in aid of the appeal or in a

> manner not inconsistent with our jurisdiction.  And because we did not
> remand the case, the trial court did not regain jurisdiction after we had
> decided the appeal.  R.C. 2953.21 et seq. did not confer jurisdiction on
> the common pleas court to entertain Gaines's postconviction petition
> because Gaines failed to satisfy either the time restrictions of R.C.
> 2953.21(A)(2) or the jurisdictional requirement of R.C. 2953.23.  And
> while a trial court retains jurisdiction to correct a void judgment, a
> *Cabrales* error does not render a judgment of conviction void.

(*Id.,* p. 2).  On April 14, 2010, the Ohio Supreme Court denied petitioner leave to
appeal and summarily dismissed petitioner's appeal from the appellate court's
December 2009 entry "as not involving any substantial constitutional question." (*Id.,*
Ex. P).

In this action, it appears that the only claim remaining for adjudication is the
double jeopardy claim alleged in Ground One of the amended petition, which is now
ripe for disposition.  The District Court declined to adopt the June 16, 2008 Report
and Recommendation and remanded the matter for reconsideration only in light of
intervening state court decisions, which arguably impacted petitioner's motion for a
stay pertaining to the double jeopardy claim.  (*See* Docs. 24-25).  Therefore, the
portion of the June 16, 2008 Report and Recommendation recommending that the
claims alleged in Grounds Two and Three of the amended petition be **DENIED** with
prejudice, and that a certificate of appealability issue with respect to the claim alleged
in Ground Three, but denied with respect to the claim alleged in Ground Two, remains
in effect and is incorporated by reference herein.  (*See* Doc. 14, pp. 8-18 & p. 27 ¶¶2-
3).

## OPINION

### A. The Double Jeopardy Claim Alleged In Ground One Of The Amended Petition Is Subject To Review On The Merits

In the supplemental return of writ filed in July 2010, respondent reasserts the
argument that petitioner procedurally defaulted and thus has waived the double
jeopardy claim alleged in Ground One of the amended petition.  (Doc. 32, Brief, pp.
4-5).

9

First, respondent contends that petitioner committed a procedural default by failing to present the multiple punishment claim on direct appeal as a federal constitutional issue under the Double Jeopardy Clause. Previously, in a footnote in the June 16, 2008 Report and Recommendation, the magistrate judge rejected that argument, which was asserted as a defense in the initial return of writ; as support for his ruling, the magistrate judge cited the District Court's decision in *Palmer v. Haviland,* No. C-1-04-28, 2006 WL 1308219, at *4-5 (S.D. Ohio May 11, 2006) (Weber, J.) (unpublished), *aff'd,* 273 Fed.Appx. 480 (6th Cir. Apr. 9, 2008) (not published in Federal Reporter). (Doc. 14, p. 19 n.10).

In *Palmer,* the petitioner similarly challenged his consecutive maximum sentences for aggravated robbery and robbery on the ground that the offenses, which were "based on the same set of facts and involved a single victim," were allied offenses of similar import under Ohio's multi-count statute, Ohio Rev. Code § 2941.25, as interpreted by the Ohio Supreme Court in *Rance.* As in this case, the respondent argued that the petitioner failed to fairly present the federal claim to the state courts because he "chose to limit his claim to an alleged state law violation of Ohio Revised Code 2941.25 as defined in ... *Rance.*" *Id.* at *5. In response, the petitioner contended that "by arguing the application of *Rance* to his case, he fairly presented his federal constitutional claim by way of a state court decision employing federal constitutional analysis in a similar fact pattern." *Id.* In a well-reasoned decision, the District Court agreed with petitioner.

In deciding the issue, the court recognized that it is well-settled that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law to satisfy the "fair presentation" requirement for federal habeas review. *See id.*; *see also McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987) (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)). As the court also pointed out, a federal habeas court may find that a claim was presented in such a way as to alert the state courts of the claim's federal nature if the petitioner (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis in similar factual contexts; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; *or* (4) alleged facts well within the mainstream of constitutional law. *Palmer, supra,* 2006 WL 1308219, at *5; *see also McMeans,* 228 F.3d at 681; *Franklin,* 811 F.2d at 326 (quoting *Daye v. Attorney General of New York,* 696 F.2d 186, 193-94 (2nd

Cir. 1982) (*en banc*)).

The *Palmer* court concluded that under those guidelines, petitioner had sufficiently alerted the state courts to the federal double jeopardy issue; the court reasoned in pertinent part:

> *Rance* involved the branch of the Double Jeopardy Clause that protects against multiple punishments for the same offense in relation to Ohio's "allied offenses" statute, Ohio Rev. Code § 2941.25.  The defendant in *Rance* argued that imposition of cumulative punishments in a single trial for two separate offenses that the defendant claimed constituted the same offense violated the Double Jeopardy Clause.  The Supreme Court of Ohio addressed the specific issue of whether "R.C. 2941.25(A) and the constitutional protections against double jeopardy prohibit trial courts from imposing separate sentences for both involuntary manslaughter and aggravated robbery."...  The Ohio Supreme Court recognized that "the double jeopardy protections afforded by the federal and state Constitutions guard citizens against ... cumulative punishments for the 'same offense.'"...  The Ohio Supreme Court noted that "the Fifth Amendment's Double Jeopardy Clause (made applicable to the states by the Fourteenth Amendment) and Ohio's counterpart are sufficiently similar to warrant consultation of federal jurisprudence when analyzing Ohio's proscription against placing persons 'twice ... in jeopardy for the same offense.'"...  The *Rance* Court went on to analyze United States Supreme Court precedent on double jeopardy [and] ultimately determined that the Ohio legislature could prescribe imposition of cumulative punishments for crimes stemming from the same criminal act "without violating the federal protection against double jeopardy or corresponding provisions of a state's constitution."...

*Palmer, supra,* 2006 WL 1308219, at *6 (case citations omitted).

The Sixth Circuit did not address the waiver issue in its decision affirming the District Court's decision to deny federal habeas relief based on the claim's merits. However, tellingly, the court mentioned, albeit in passing, that the claim was "grounded in double-jeopardy concerns."  *Palmer v. Haviland,* 273 Fed.Appx. at 481.

In addition, Ohio courts have themselves consistently recognized the double

jeopardy considerations involved when considering claims that offenses should have been merged as "allied offenses of similar import" under Ohio Rev. Code § 2941.25. In numerous decisions addressing the issue, the courts have pointed out that the "allied offenses statute" is premised on "protect[ing] against multiple punishments for the same criminal conduct in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions." *See, e.g., State v. Gonzales,* 783 N.E.2d 903, 912 (Ohio Ct. App. 1 Dist. 2002), *appeal dismissed,* 782 N.E.2d 78 (Ohio 2003); *State v. Moore,* 675 N.E.2d 13, 16 (Ohio Ct. App. 1 Dist.) (and cases cited therein), *appeal dismissed,* 671 N.E.2d 1283 (Ohio 1996); *State v. Lowery,* No. 2007-T-0085, 2008 WL 1777845, at *2 (Ohio Ct. App. 11 Dist. Apr. 21, 2008) (unpublished); *State v. Polk,* No. 88639, 2007 WL 2443883, at *2 (Ohio Ct. App. 8 Dist. Aug. 30, 2007) (unpublished); *State v. Downing,* No. 22012, 2004 WL 2535422, at *9 (Ohio Ct. App. 9 Dist. Nov. 10, 2004) (unpublished); *State v. Moore,* No. E-03-006, 2004 WL 291145, at *2 (Ohio Ct. App. 6 Dist. Feb. 13, 2004) (unpublished); *State v. Brindley,* No. 01AP-926, 2002 WL 1013033, at *2 (Ohio Ct. App. 10 Dist. May 21, 2002) (unpublished), *appeal dismissed,* 775 N.E.2d 857 (Ohio 2002); *State v. Ritchie,* No. 15792, 1997 WL 435698, at *17 (Ohio Ct. App. 2 Dist. July 25, 1997) (unpublished), *appeal dismissed,* 686 N.E.2d 274 (Ohio 1997); *cf. Rogers v. Moore,* No. 1:07cv456, 2008 WL 2640664, at *1, *5 (S.D. Ohio July 2, 2008) (unpublished) (Spiegel, S.J.; Black, M.J.). Indeed, the Ohio Supreme Court long ago expressly emphasized that "[i]n Ohio we have ... attempted to effectuate the principles of the Double Jeopardy Clause of the United States Constitution not only generally by way of Section 10 of Article I of the Ohio Constitution, *but also by way of R.C. 2941.25, the so-called multiple-count statute*." *State v. Thomas,* 400 N.E.2d 897, 902 (Ohio) (emphasis added), *cert. denied,* 449 U.S. 852 (1980), *overruled on other grounds by State v. Crago,* 559 N.E.2d 1353 (Ohio 1990).

In the supplemental return of writ filed in July 2010 (Doc. 32, Brief, p. 4), respondent cites two recent decisions from the Southern District of Ohio, which conflict with *Palmer*: *Musselman v. Warden, Chillicothe Corr. Inst.,* No. 3:09cv407, 2010 WL 1995091, at *3-4 (S.D. Ohio May 19, 2010) (unpublished) (Merz, M.J.) (denying certificate of appealability for a double jeopardy claim found to have been procedurally defaulted because the petitioner failed to fairly present the federal constitutional issue to the state courts and "instead rel[ied] on Ohio decisions interpreting the allied import statute"); *Dixson v. Warden, Warren Corr. Inst.,* No. 1:08cv540, 2010 WL 60905, at *1, *7-8 (S.D. Ohio Jan. 5, 2010) (Dlott, C.J.; Merz, M.J.) (adopting without opinion a Report and Recommendation, wherein it was recommended that the double jeopardy claim be dismissed as procedurally defaulted

because the claim was argued on direct appeal in the state courts "solely in terms of Ohio Revised Code § 2941.25").

The undersigned is not persuaded by those decisions, which unlike *Palmer,* did not address whether the state courts may have been alerted to the federal nature of the claim given that the applicable Ohio precedents have employed federal constitutional analysis in similar factual contexts, or have at least recognized the federal double-jeopardy concerns inherently involved in determining whether multiple convictions should have been merged as "allied offenses of similar import" under Ohio Rev. Code § 2941.25. Instead, in accordance with the magistrate judge's initial ruling on June 16, 2008 in the instant case, this Court remains persuaded by *Palmer* that the double jeopardy issue was fairly presented to the state courts on direct appeal and, therefore, rejects respondent's argument that only a state-law claim was raised.

Second, respondent contends that petitioner has waived the double jeopardy claim, because the Ohio courts relied on an adequate and independent state ground in denying petitioner's recent petition for post-conviction relief as untimely. (Doc. 32, Brief, pp. 4-5). If petitioner had not raised the claim earlier in the *Anders* brief on direct appeal, respondent's argument would be compelling. *See, e.g., Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *Bird v. Hurst,* 110 Fed.Appx. 474, 478 (6th Cir. Aug. 9, 2004) (not published in Federal Reporter). However, because the Court has determined that petitioner fairly presented the double jeopardy claim in the direct review proceedings, the argument is unavailing.

Accordingly, in sum, the Court concludes that the double jeopardy claim alleged in Ground One of the amended petition was fairly presented to the Ohio courts for consideration in the direct review proceedings. Therefore, the claim is not procedurally defaulted and is subject to review on the merits herein.

**B. An Uncertain Question Of State-Law Determinative Of The Double Jeopardy Issue Should Be Certified To The Ohio Supreme Court As To Whether The Current Construction And Application Of Ohio Rev. Code § 2941.25 Under *Cabrales* Applies To Petitioner's Pre-*Cabrales* Convictions**

As an initial matter, the undersigned adopts and incorporates herein the following discussion contained in the June 16, 2008 Report and Recommendation regarding the double jeopardy issue facing the Court and the legal standards governing

13

its resolution:

> ....The Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), among other things, protects against "multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)).
>
> In the "multiple punishment" context, the protection is limited to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977). Therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Johnson,* 467 U.S. at 499; *see also Palmer v. Haviland,* [273 Fed.Appx. at 484] (unlike other double jeopardy protections prohibiting re-prosecution for the same offense, "the multiple punishments category of double jeopardy is primarily one of legislative intent").
>
> In the federal courts, the test established in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), is normally used to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432 U.S. at 166. However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n.8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989).
>
> Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Banner,* 886 F.2d at 780; *Palmer,* [273 Fed.Appx. at 486] (on federal habeas review, "[w]e cannot independently apply typical rules of

14

statutory construction, including the *Blockburger* test, to a state statute and conclude that the state courts were wrong in their reading of legislative intent"). A state legislature may create substantive crimes and punishments that overlap to some degree without violating the Double Jeopardy Clause. Therefore, "[e]ven if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n.8.

In Ohio, the legislature's intent in the multiple punishment area may be discerned from the state multiple-count statute, Ohio Rev. Code § 2941.25. *See State v. Rance,* 710 N.E.2d 699, 635 (Ohio 1999). The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Supreme Court of Ohio has held that this provision permits the trial court to convict and impose cumulative sentences for two or more offenses arising from the same incident if the offenses (1) are of dissimilar import; or (2) are of similar import, but were committed separately or with separate animus. *Rance,* 710 N.E.2d at 636. The applicable test for deciding the issue potentially involves a two-step analysis under the state statute.

First, if the statutory elements of the various crimes, considered "in the abstract" without regard to the particular facts of the case, are found to

15

be of dissimilar import because they do not "correspond to such a degree that the commission of one crime will result in the commission of the other," the multiple convictions and punishments are permitted and the court's inquiry ends. *Id.*

If the offenses are found to be of similar import, the second level of inquiry is triggered requiring the court to determine whether or not the defendant may be cumulatively punished for them because, as a factual matter, they were committed separately or with a separate animus. *See id.; see also State v. Jones,* 676 N.E.2d 80, 81-82 (Ohio 1997)....

In this case, because the two aggravated vehicular homicide charges stem from a single incident involving only one victim, the undersigned finds that the offenses were not committed separately or with a separate animus under the second step of the *Rance* test. Therefore, the disposition of petitioner's claim for relief turns on the first step of the *Rance* inquiry, which involves a determination of a state-law issue as to whether the Ohio legislature intended multiple punishments for aggravated vehicular homicide when there is only one victim.

(Doc. 14, pp. 19-22) (footnotes omitted).

The problem faced herein in discerning the state legislature's intent is that the Ohio Court of Appeals did not provide any reasons for its decision summarily rejecting claims that were raised by petitioner in the *Anders* brief filed on direct appeal. Moreover, when petitioner's convictions became final by the conclusion of direct review in 2005, neither the Ohio Supreme Court nor the First District Court of Appeals, which presided over petitioner's appeal, had addressed the question whether the multiple aggravated vehicular homicide charges stemming from a single automobile accident involving one victim are of dissimilar import when "viewed in the abstract." Indeed, two appellate panels from the same appellate division, which by that time had considered the question in analogous contexts, had reached differing conclusions. *Compare State v. Culver,* 826 N.E.2d 367, 378-79 (Ohio Ct. App. 2 Dist. 2005) (holding that consecutive sentences for aggravated vehicular assault and vehicular assault could have been imposed because the elements of the two offenses do not correspond when compared in the abstract) *with State v. Liming,* No. 03CA43, 2004 WL 67959, at *1 (Ohio Ct. App. 2 Dist. Jan. 16, 2004) (unpublished) (stating in passing that it was "undisputed" that the defendant could not be convicted of two

16

counts of aggravated vehicular homicide in a case involving only one victim, because "the two versions of the same offense are allied offenses of similar import").

As respondent has pointed out, the First District Court of Appeals ultimately determined in unpublished decisions filed, respectively, in July and December 2007 that the two aggravated vehicular homicide offenses charged in the instant case are dissimilar under the first level of the *Rance* inquiry, and thus do not implicate double jeopardy concerns. *See Hundley, supra*, 2007 WL 2019804, at *2-3 ; *State v. Palmer,* No. C-060754, 2007 WL 4463975, at *4 (Ohio Ct. App. 1 Dist. Dec. 21, 2007) (unpublished).[5] However, within a year thereafter, the Ohio Supreme Court issued its decision in *Cabrales* clarifying *Rance* and holding that some of the intermediate appellate courts, including the First District Court of Appeals, had misintepreted *Rance* as requiring a "strict textual comparison" of the elements. In light of *Cabrales,* the First District Court of Appeals overruled *Hundley* in August 2008, just over a year after *Hundley* was decided. *See Moore, supra,* 2008 WL 3544342, at *1. Moreover, on December 9, 2008, the Ohio Supreme Court reversed the First District Court of Appeals' holding in *Palmer* "that the two counts of aggravated vehicular homicide ... were ... not ... allied offenses of similar import under R.C. 2941.25(A)." *State v. Palmer,* 898 N.E.2d 960 (Ohio 2008). Therefore, it appears clear that if the Ohio appellate courts were presented with the issue today, they would find that reversible error was committed in this case because the state legislature did not intend to authorize cumulative punishments for the two aggravated vehicular homicide offenses charged against petitioner, which stemmed from a single accident involving one victim.

Respondent contends, however, in the supplemental return of writ that at the time his convictions became final in 2005, "the Ohio legislature intended to impose multiple punishments for the vehicular homicide of one victim where one offense involved abusing alcohol and the other recklessness." (Doc. 32, Brief, p. 10). Respondent further argues that the Ohio Supreme Court's later decision in *Cabrales*, which was interpreted in petitioner's favor by the First District Court of Appeals in *Moore* and by the Ohio Supreme Court in *Palmer*, announced a "new rule of state law" that may not be applied retroactively to petitioner. (*Id.,* pp. 10-11).

---

[5]It is noted, however, that in both *Hundley* and *Palmer,* one of the judges on the three-judge appellate panel filed separate opinions dissenting from the majority on the double jeopardy issue. *See Hundley, supra,* 2007 WL 2019804, at * 3-4 (Painter, J., dissenting in part); *Palmer, supra,* 2007 WL 4463975, at *5 (Painter, J., dissenting in part).

As respondent has argued, under Ohio law, "newly declared constitutional rules in criminal cases are applied prospectively, not restrospectively," and thus "only to cases that are pending on the announcement date." *State v. Colon,* 893 N.E.2d 169, 170 (Ohio 2008), *overruled on other grounds by State v. Horner,* __ N.E.2d __, Nos. 2009-0079 and 2009-0311, 2010 WL 3447686 (Ohio Aug. 27, 2010) (to be published). However, it is unclear whether the *Cabrales* announced a new rule as respondent has contended, or merely clarified existing law established in *Rance* in resolving a conflict that had developed among the intermediate state courts in the wake of *Rance* for discerning the legislature's intent in analogous factual contexts. The parties have not cited, nor could the undersigned find, any case definitively answering that question or, for that matter, how the state's highest court would have decided the issue at the time of petitioner's conviction and appeal.

As the magistrate judge pointed out in the first Report and Recommendation filed in this case (*see* Doc. 14, p. 22), it is well-settled that the federal habeas court normally is bound by the state court's interpretation of state law that was "announced on direct appeal of the challenged conviction." *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991), and *Mullaney v. Wilbur,* 421 U.S. 684, 691(1975)). In the present case, however, the Ohio courts offered no construction of the relevant state law in disposing of "points" raised by petitioner in the *Anders* brief. The state courts' summary disposition of the appeal provides no basis for determining on what grounds or by what reasoning petitioner's claims were rejected. Moreover, as discussed above, at the time of petitioner's conviction and appeal, only a few intermediate appellate courts had addressed the issue in analogous factual contexts and had reached conflicting results in applying the *Rance* standard. Only after petitioner's conviction and appeal did the Ohio appellate courts finally decide the question–first, in 2007, against petitioner based on the First District Court of Appeals' misinterpretation of *Rance* and finally, in 2008, in petitioner's favor in light of *Cabrales* under both the First District Court of Appeals' decision in *Moore* and the Ohio Supreme Court's decision in *Palmer*.

The parties have not cited, nor could the undersigned find, any Supreme Court or Sixth Circuit case that is helpful in resolving the difficult double jeopardy issue posed by the unusual circumstances of this case. However, the undersigned finds one case decided by the Tenth Circuit–*Burleson v. Saffle*, 278 F.3d 1136 (10th Cir. 2002), which was cited by respondent in the supplemental return of writ (*see* Doc. 32, Brief, p. 6), is instructive and provides some guidance in determining the proper course of action to take herein.

18

In *Burleson*, 278 F.3d at 1143-44, the federal habeas court was similarly faced with a double jeopardy issue that was "inextricably intertwined with the proper construction of [a state] statute." As in this case, the question whether the state legislature intended to prescribe multiple punishments for the petitioner's offenses was difficult to assess, because the state appellate court was silent "as to the reasons for its affirmance of [the] conviction," and "the only authoritative construction" of the relevant statute was found in a subsequent state supreme court decision issued *after* the petitioner's conviction became final, which supported the petitioner's claim that he was improperly subjected to multiple punishments for one offense. *See id.* at 1139, 1143-44.

In addressing the issue posed in that case, the Tenth Circuit recognized that under the deferential standards of review established for consideration of 28 U.S.C. § 2254 petitions, "our task is ordinarily straightforward enough, even where resolution of a federal question depends upon the resolution of a predicate state-law question: We defer absolutely to the state court's disposition of the state-law question and proceed to review the court's application of federal law to ascertain whether or not it was reasonable." *Id.* at 1144 (citing *Schad v. Arizona,* 501 U.S. 624, 636 (1991) Souter, J., concurring); *Johnsonv v. Fankell,* 520 U.S. 911, 916 (1997); and *Robinson v. California*, 370 U.S. 660, 666 (1962)). The circuit court also emphasized that "we will normally defer to a state court's result even when it is unaccompanied by supporting reasoning." *Id.* (citing *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999)). Nevertheless, the court was troubled by the "unusual confluence of circumstances attending the present case," which made "impossible an easy resolution of the federal constitutional question presented to us." *Id.*

The court concluded that "the proper course of action in the present case is to certify the predicate state-law question" to the state supreme court "and stay the proceedings until we receive an answer." *Id.* at 1145 (citing *Stewart v. Smith,* 534 U.S. 157 (2001) (*per curiam*)). In so concluding, the court reasoned in relevant part:

> Here the defendant's constitutional rights are intertwined with the construction of a state statute, the state court was silent as to the statute's proper construction, its criminal courts have never previously interpreted the statute, and its highest criminal court has subsequently construed the statute in a manner that implicates the defendant's constitutional rights. In this situation, it would be improper for us as a federal reviewing court to divine which construction the state court chose to give its own statute

from amongst a universe of more or less plausible possibilities.  In the interest of comity, we will not lightly presume that the state court resolved a statutory question in a manner that would lead to a constitutional violation....

*Id.* at 1144.

The instant case differs from *Burleson* only to the extent that at the time of petitioner's conviction and appeal, the First District Court of Appeals was generally misinterpreting *Rance*'s "abstract elements comparison test" to require a "strict textual comparison" of the elements.  The undersigned is persuaded that the course of action taken in *Burleson* is appropriate in this case as well in light of the state courts' silence in affirming petitioner's conviction in the instant case; the absence of controlling state court precedents at that time addressing the predicate state-law question in analogous factual contexts; and the subsequent state court decisions clarifying *Rance* and construing Ohio Rev. Code § 2941.25 in a manner that implicates petitioner's constitutional rights.

Accordingly, in the interest of comity, the undersigned recommends that the following question(s) should be certified to the Ohio Supreme Court in accordance with the procedure set forth in Rule XVIII of the Rules of Practice of the Supreme Court of Ohio, because they involve a "question of Ohio law determinative of the proceeding and for which there is no controlling precedent in the decisions" of that court, *see* Rule XVIII, § 1, of the Rules of Practice of the Supreme Court of Ohio:

Whether in this case, which involved a single automobile accident resulting in the death of one victim, Ohio Rev. Code § 2941.25 could be construed at the time of petitioner's conviction and direct appeal in 2005 as permitting a "strict textual comparison" of the elements and a finding, in accordance with the First District Court of Appeals' later decision in *State v. Hundley,* No. C-060374, 2007 WL 2019804, at *2-3 (Ohio Ct. App. 1 Dist. July 13, 2007) (unpublished), *appeal dismissed,* 877 N.E.2d 991 (Ohio 2007), that the two aggravated vehicular homicide charges brought against petitioner under Ohio Rev. Code §§ 2903.06(A)(1)(a) and 2903.06(A)(2) are dissimilar when compared in the abstract; or whether, conversely, at the time of petitioner's conviction and direct appeal in 2005, the proper construction of Ohio Rev. Code § 2941.25 required a finding that the two offenses are of similar import in

accordance with the subsequent clarification in *Cabrales* of the *Rance* "abstract elements comparison test," as well as *State v. Palmer,* 898 N.E.2d 960 (Ohio 2008), and the First District Court of Appeals' decision in *State v. Moore,* No. C-70421, 2008 WL 3544342 (Ohio Ct. App. 1 Dist. Aug. 15, 2008) (unpublished), *appeal dismissed,* 900 N.E.2d 200 (Ohio 2009), overruling *Hundley.*

Petitioner, as the party requesting federal habeas corpus relief from the consecutive sentences imposed in this case, should be designated as the moving party. Moreover, nothing in the certification, including the particular phrasing of the foregoing questions, should be deemed as limiting the Ohio Supreme Court in its consideration of the state-law questions presented.

## IT IS THEREFORE RECOMMENDED THAT:

Petitioner's remaining claim alleged in Ground One of his amended petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 (Doc. 6) be **STAYED** pending the Ohio Supreme Court's consideration of the following state-law question(s), which the undersigned **RECOMMENDS** should be **CERTIFIED** to the state supreme court to answer in accordance with Rule XVIII of the Rules of Practice of the Supreme Court of Ohio:

Whether in this case, which involved a single automobile accident resulting in the death of one victim, Ohio Rev. Code § 2941.25 could be construed at the time of petitioner's conviction and direct appeal in 2005 as permitting a "strict textual comparison" of the elements and a finding, in accordance with the First District Court of Appeals' later decision in *State v. Hundley,* No. C-060374, 2007 WL 2019804, at *2-3 (Ohio Ct. App. 1 Dist. July 13, 2007) (unpublished), *appeal dismissed,* 877 N.E.2d 991 (Ohio 2007), that the two aggravated vehicular homicide charges brought against petitioner under Ohio Rev. Code §§ 2903.06(A)(1)(a) and 2903.06(A)(2) are dissimilar when compared in the abstract; or whether, conversely, at the time of petitioner's conviction and direct appeal in 2005, the proper construction of Ohio Rev. Code § 2941.25 required a finding that the two offenses are of similar import in accordance with the subsequent clarification in *Cabrales* of the *Rance* "abstract elements comparison test," as well as *State v. Palmer,* 898

N.E.2d 960 (Ohio 2008), and the First District Court of Appeals'
decision in *State v. Moore,* No. C-70421, 2008 WL 3544342 (Ohio Ct.
App. 1 Dist. Aug. 15, 2008) (unpublished), *appeal dismissed,* 900
N.E.2d 200 (Ohio 2009), overruling *Hundley.*[6]

Date:  September 29, 2010                       s/ J. Gregory Wehrman
     cbc                                       J. Gregory Wehrman
                                                United States Magistrate Judge

C:\DATA\2010\sept\07-347RR.certQ-OhSCt.retroactiveCabrales-DJalliedoffense.wpd

---

     [6]As discussed above, *see supra* p. 9, the portion of the June 16, 2008 Report and
Recommendation recommending that the claims alleged in Grounds Two and Three of the
amended petition be **DENIED** with prejudice, and that a certificate of appealability issue with
respect to the claim alleged in Ground Three, but denied with respect to the claim alleged in
Ground Two, remains in effect and is incorporated by reference herein.  (*See* Doc. 14, pp. 8-18
& p. 27 ¶¶2-3).

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Tony Gaines,
      Petitioner

    vs                            Case No. 1:07cv347
                                   (Barrett, J.; Wehrman, M.J.)

Warden, Madison Correctional
Institution,
      Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).